IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TAMMY LYN MILLER**, : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> **ANDREW SAUL** : <br> Commissioner : <br> of Social Security, : <br> : <br> Defendant. : <br> : | CIVIL ACTION No. 19-5218 |

**MEMORANDUM OPINION**

**RICHARD A. LLORET**                                                                                             June 29, 2020
**U.S. MAGISTRATE JUDGE**

**INTRODUCTION**

Plaintiff Tammy Lyn Miller ("Ms. Miller" or "Plaintiff") was denied Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") by decision of an Administrative Law Judge ("ALJ") dated September 20, 2018. R. 20. Ms. Miller was 41 years old at the time of the decision. R. 178. Ms. Miller claims to suffer from degenerative disc disease of the lumbar and cervical spine, degenerative joint disease of the right knee, asthma, obesity, hypertension, post-traumatic stress disorder, and bipolar disorder. Pl. Br. 3. At the hearing before the ALJ, Ms. Miller also described suffering from incontinence as well as loss of feeling in her hands that causes her to drop items frequently. R. 55-57.

Ms. Miller challenges the ALJ's denial of DIB and SSI on the basis that the ALJ (1) erroneously gave little weight to Ms. Miller's treating physician's opinion, (2) substituted the ALJ's lay opinion for medical evidence in finding that Ms. Miller could

perform sedentary work, (3) erroneously found Ms. Miller's testimony not credible and failed to consider the third-party statement of Ms. Miller's son, and (4) erroneously omitted some of Ms. Miller's medical limitations credibly established by her treating physician in posing the hypothetical to the vocational expert.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff has a history of chronic low back and neck pain. She received lumbar laminectomy and spinal fusion surgery at the age of eighteen in 1995. R. 814. However, this fusion was torn open due to an injury Ms. Miller sustained while working as an assistant manager of a convenience store on October 3, 2010. R. 48. Ms. Miller received a Workers' Compensation settlement for her injury. *Id.* Since 2013, she has been receiving treatment from a pain management specialist, Dr. Jay Mergaman, M.D., approximately every three months. Dr. Mergaman has diagnosed Ms. Miller with post-laminectomy syndrome, lumbar radiculopathy, spondylosis, and cervical facet syndrome. R. 840.

The medical reports indicate consistent complaints by Ms. Miller of paracervical and paralumbar pain. R. 784-808. The treatment records also state that Dr. Mergaman prescribed Plaintiff Oxycontin, Oxycodone, and Baclofen for her pain as well as a motorized wheelchair, which Miller has not yet obtained. R. 782-826, 837. Dr. Mergaman also gave Ms. Miller facet block injections for her back and neck pain. R. 812. Ms. Miller also tried physical therapy from February to April 2018 but reported little improvement. R. 736-58. Dr. Mergaman states her prognosis is guarded. R. 840.

Ms. Miller has a high school equivalent (GED) education and her previous relevant work experience includes employment as a city paratransit driver, convenience store assistant manager, and school bus driver. Pl. Br. 3. Ms. Miller has not worked

since March 2011, and Miller's son, Uriah T. Miller, has worked full-time since 2017 to financially support their household. R. 44. Ms. Miller's son also assists her with taking care of herself and the household chores, stating, "I had to learn to cook, clean, do laundry, I even help [Ms. Miller] with her socks and shoes and bra." R. 268. Ms. Miller claims to rarely leave her home because of her physical condition and uses the assistance of either a cane or a walker to move outside or throughout her home. R. 52-53.

Ms. Miller initially applied and was denied benefits under Title II and Title XVI of the Social Security Act on September 4, 2015. R. 221. Less than a year later on February 29, 2016, Ms. Miller filed an application requesting the reopening of her initial claim. R. 89-90, 177-78. Ms. Miller claimed an onset disability date of February 27, 2015, the date she received an MRI in which small broad-based disc herniations in both the thoracic and lumbar spine were discovered. R. 42, 844-51. These applications were denied on August 4, 2016. R. 91-100. Ms. Miller then requested a hearing on October 4, 2016. R. 120. Ms. Miller testified at the hearing held on August 8, 2018, where she was represented by counsel. R. 43-59. A neutral vocational expert also testified. R. 59-64. The ALJ denied Plaintiff benefits in a decision dated September 20, 2018, finding that Ms. Miller could perform sedentary work. R. 27. Ms. Miller requested review by the Appeals Council on November 14, 2018, which was denied on September 5, 2019, making the ALJ's decision the final decision of the Commissioner. R. 1-7.

The record contains a form labeled "Pain Interrogatories" filled out by Dr. Mergaman, a third-party statement (quoted previously) submitted by Ms. Miller's son, Uriah T. Miller, Ms. Miller's testimony of her physical condition, vocational expert testimony, Ms. Miller's MRI results, and various medical treatment records.

3

Dr. Mergaman's report stated that Miller's complaints were associated with physiological and anatomical abnormalities severe enough to "interfere with" Ms. Miller's standing, walking, sitting, and handling functions 1/3 to 2/3 of an eight-hour workday on a regular basis. R. 841. Dr. Mergaman also stated that Ms. Miller would need to change positions every 15-30 minutes, and could not bend, squat, and reach more than a "limited amount of times" during an eight-hour workday. *Id.* Dr. Mergaman selected the option on the form that Ms. Miller would miss work more than four times per month due to her disabilities, which were severe enough, in the doctor's opinion, that Ms. Miller could not "repetitively operate a computer keyboard and mouse." R. 841, 843.

The ALJ made the following findings of fact and conclusions of law pursuant to the five-step sequential analysis mandated by the regulations.[1] At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity at any time relevant to the decision. At step two, the ALJ found that Plaintiff had severe impairments of obesity, degenerative disc disease of the right knee, degenerative joint disease of the lumbar and cervical spine, hypertension, asthma, bipolar disorder, and post-traumatic stress disorder. R. 25.

---

[1] An ALJ evaluates each case using a sequential process until a finding of "disabled" or "not disabled" is reached. The sequence requires an ALJ to assess whether a claimant: (1) is engaging in substantial gainful activity; (2) has a severe "medically determinable" physical or mental impairment or combination of impairments; (3) has an impairment or combination of impairments that meet or equal the criteria listed in the Social Security Regulations and mandate a finding of disability; (4) has the residual functional capacity to perform the requirements of her past relevant work, if any; and (5) is able to perform any other work in the national economy, taking into consideration her residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).

At step three, the ALJ found that Plaintiff's impairments did not meet the criteria of 20 C.F.R. Part 404; therefore, the ALJ proceeded to step four.[2] The ALJ assessed Ms. Miller's residual functional capacity (RFC) and found that Ms. Miller was able to perform sedentary work.[3] R. 27. In finding so, the ALJ gave little weight to Dr. Mergaman's opinion and found Ms. Miller's subjective complaints not credible because the ALJ found that the complaints were not supported by the objective medical evidence in the record. R. 28-30. The ALJ specifically pointed to Ms. Miller's "conservative treatment" for her pain and findings of only "mild to moderate degenerative changes" shown in the diagnostic imaging and physical exam reports. R. 28, 30.

After assessing Ms. Miller's RFC as capable of sedentary work, the ALJ found in step four that Ms. Miller was not capable of returning to her past relevant work and proceeded to step five. The ALJ posed a hypothetical to the vocational expert reflecting what the ALJ believed to be Ms. Miller's credibly established limitations.[4] Based on the hypothetical, the vocational expert testified that an individual with these limitations could have the jobs of document preparer, food and beverage order clerk, and telephone

---

[2] *See generally* 20 C.F.R. § 404.1520(e): If a claimant's impairment does not "meet or equal a listed impairment," the ALJ will assess the claimant's residual functional capacity based on the medical evidence included in the record. This determination is used in step four of the five-step sequential process to determine if a claimant can either perform his or her past relevant work and in step five to determine if a claimant can "adjust to other work."

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

[4] The ALJ instructed the vocational expert to assume the hypothetical individual could perform sedentary work. The hypothetical individual described cannot "engage in any overhead reaching. Can frequently reach, handle, finger, but never feel. Cannot climb ladders, ropes, or scaffolds. Cannot crawl. Cannot kneel. Can occasionally engage in all other postural maneuvers, and tolerate no more than occasional exposure to humidity, extreme temperatures, or pulmonary irritants...Limited to performing and (sic) repetitive tasks, and can engage in brief, goal-directed interactions with supervisors, coworkers, or the general public on up to a frequent basis throughout the day, in occupations where there are few and infrequent changes in the setting, or the task performed." R. 61-62.

5

quotation clerk.[5] R. 62. The ALJ accordingly found that Ms. Miller was not disabled because although she could not perform her past relevant work, she could make a "successful adjustment to other work that exists in significant numbers in the national economy." R. 30-32.

After careful review, I find that the ALJ erred in determining Ms. Miller capable of sedentary work by (1) impermissibly discounting the available medical opinion evidence and (2) interpreting the medical data in the record based on lay opinion. In short, the ALJ's findings of fact were not supported by substantial evidence for these reasons.

## DISCUSSION

### A. Standard of Review.

My review of the agency's decision is subject to the deferential substantial evidence standard. *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). The ALJ's findings of fact must be supported by substantial evidence in the record to be upheld. 42 U.S.C.A. § 405(g) (West 2019); *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986). Accordingly, I must review the record and determine whether it contains "sufficient evidence" to support the ALJ's denial of benefits to the claimant. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In doing so, I may not "re-weigh the evidence" in the record or make my own determinations of fact. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir.

---

[5] When asked by Plaintiff's counsel, the vocational expert answered that in his opinion, the Plaintiff having to miss more than four days of work per month (as Dr. Mergaman reported) "would not be acceptable to most employers." R. 63.

2011). I must accept the ALJ's findings of fact supported by substantial evidence as conclusive. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

Substantial evidence means "more than a mere scintilla" but is still "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 390 (1971) (quoting *Consol. Edison Co.*, 305 U.S. at 229). The substantial evidence standard does not require a "large or considerable amount of evidence" supporting the ALJ's decision. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (quoting *Pierce v. Underwood*, 487 U.S. 552 (1988)).

However, there is still plenary review over the ALJ's application of legal principles. *Payton v. Barnhart*, 416 F. Supp. 385, 387 (E.D. Pa. 2006) (citing *Krysztoforski v. Chater*, 55 F.3d 857, 858 (3d Cir. 1995)). If it is found that the ALJ used incorrect legal principles, I must reverse the ALJ's decision even if it is supported by substantial evidence. *Id.* (citing *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983)).

B.  **Substantial evidence does not support the ALJ's RFC determination nor the designation of little weight to treating physician Dr. Mergaman's opinion.**

Ms. Miller first contests the ALJ's decision on the basis that the ALJ improperly discounted the opinion of her treating physician, and consequently, the ALJ substituted lay opinion in determining Ms. Miller was capable of sedentary work. I agree.[6]

When evaluating medical opinion evidence in the record, the SSA gives controlling weight to a treating source's opinion so long as the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is

---

[6] Because Ms. Miller does not contest the ALJ's decision regarding her mental impairments, this opinion will focus on Miller's physical limitations.

7

not inconsistent" with other evidence. 20 C.F.R. § 416.927(c)(2) (2017). However, this does not completely prevent an ALJ from discounting the opinion of a treating physician because the disability and RFC determinations are ultimately the ALJ's sole responsibility. *Chandler*, 667 F.3d at 361; 20 C.F.R. § 404.1527(d)(1). Still, disregarding a treating physician's opinion has led to a finding of no substantial evidence in previous cases. *See Doak*, 790 F.2d at 29 (overturning an ALJ's finding that claimant could perform light work without any medical opinion corroborating that determination of functional capacity). A treating physician's opinion should only be rejected with contradictory medical evidence. *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988).

When rejecting or giving little weight to a treating physician's opinion regarding the claimant's disability and functional capabilities, the ALJ is required to support his or her decision with other objective medical evidence in the record that speaks to the claimant's functional capacities. *Hartman v. Colvin*, No. 02:13–cv–00265–TFM, 2014 WL 1784084, at *8 (W.D. Pa. May 5, 2014) (citing *Biller v. Colvin*, 962 F. Supp. 2d 761, 778-79 (W.D. Pa. 2013)). The *Biller* court stated that a decision regarding a claimant's RFC could "rarely" be made without the opinion of a physician because an ALJ is not a medical professional and therefore cannot make medical conclusions. *Biller*, 962 F. Supp. 2d at 778-79 (quoting *Gormont v. Astrue*, No. 11-2145, 2013 WL 791455, at *7 (M.D. Pa. Mar. 4, 2013)). In that vein, the ALJ may not make "speculative inferences from medical reports" or reject a treating physician's opinion based on the ALJ's lay opinion. *Morales v. Apfel*, 225 F.3d 310, 317-18 (3d Cir. 2000) (citing *Plummer*, 186 F.3d at 429).

8

Unlike *Chandler*, the ALJ in this case discounted the only source of medical opinion evidence in the record rather than choosing to credit one medical opinion more highly than another. The facts of this case are closer to *Doak*, in which the ALJ could only rely on the claimant's and vocational expert's testimonies after discounting all medical opinion evidence in the record. The ALJ in this case gives a short justification for giving "little weight" to Dr. Mergaman's opinion, simply stating that the descriptions of Miller's limitations are "not quantified in a meaningful way" because the term "interfere with" (used on the form Dr. Mergaman submitted) "could mean almost anything." R. 30. The ALJ further states that the quantifiable limitations on the form, such as the claim that Miller would need to change positions every 15-30 minutes of a workday, contradict the results of the MRI and the treatment records. R. 30. Yet the ALJ points to nothing in the MRI results or treatment records that contradict Dr. Mergaman's conclusions.

The ALJ based her finding that Ms. Miller could perform sedentary work on the same reasoning. After not giving Dr. Mergaman's opinion controlling or even substantial weight, the ALJ erroneously relies on her lay opinion of Ms. Miller's medical records. Specifically, the ALJ finds Ms. Miller to have undergone only "conservative treatment" based on the medical records. R. 28. The ALJ then cites to the diagnostic images and treatment records in the record, not finding them to support Ms. Miller's claims and the limitations Dr. Mergaman specified.

Regarding Ms. Miller's knee limitations, the ALJ states, "Imaging studies of the right knee show only mild degenerative joint disease." R. 28-29. Regarding Ms. Miller's claims of neck and back pain, the ALJ states that the imaging studies of the cervical spine show "only mild to moderate spondylosis without evidence of any cord

9

compression, disc herniation, or nerve root disease." R. 29. The ALJ goes on to say that imaging studies of the lumbar spine show a "small disc herniation at L4-L5, and a grade 2 spondylolisthesis." *Id.* Finally, the ALJ notes that Ms. Miller has full motor strength in her extremities. *Id.*

However, the treatment records from Dr. Mergaman, whom Ms. Miller has seen approximately every three months since 2013, document consistent complaints of bilateral paracervical pain, right greater than the left at a few instances, radiating into the shoulders with no associated paresthesias. R. 784-808. The medical records also describe Ms. Miller having recurrent paralumbar pain, left equal to right, radiating to the hips, buttocks, lower extremities, and feet with intermittent paresthesias. *Id.* Dr. Mergaman diagnosed Ms. Miller with post-laminectomy syndrome, lumbar radiculopathy, spondylosis, and cervical facet syndrome.

Dr. Mergaman prescribed Ms. Miller Oxycontin, Oxycodone, and Baclofen for her pain as well as a motorized wheelchair,[7] which the ALJ deemed not necessary solely based on her own interpretation of the treatment notes. R. 31. In addition to this treatment plan, Dr. Mergaman gave Ms. Miller facet block injections for multilevel cervical facet arthritis and neck pain. R. 812. Ms. Miller's back pain is not of unknown origin. She has a documented history of spinal issues, receiving fusion surgery when she was just eighteen years old, which has since been torn open when Ms. Miller was injured on the job in 2010. R. 814.

The ALJ discounts the quantifiable limitations of Ms. Miller's injuries submitted by Dr. Mergaman by pointing to the various diagnostic imaging studies that indicate

---

[7] Neither opioid pain medications nor a motorized wheelchair qualify as "conservative" treatment in most instances. The ALJ has not explained why she believed they were.

"mild to moderate" degenerative changes. However, these diagnostic imaging studies do not speak by themselves to Ms. Miller's functional limitations affecting her ability to work. Interpreting the impact of these diagnostic findings on Ms. Miller's limitations requires medical expertise. By discounting the only medical opinion evidence in the record, there is no medical corroboration of the ALJ's finding that the degenerative changes described do not cause the type of pain Ms. Miller claims and inhibit ability to perform even sedentary work.

The ALJ looked at the treatment records and decided that the treatment Ms. Miller has received is only "conservative." The import of the conservative treatment comment seems to be that if the Plaintiff's condition were disabling one would expect to see more aggressive treatment. In the absence of a medical opinion in the record to this effect, the ALJ's conservative treatment comment is of little value. Inferences from the absence of evidence can be probative, but they require reliable and complete contextual knowledge of what one should expect to see. A lay person does not have the training or experience to know reliably whether a particular treatment regimen is conservative, aggressive, the mark of genius, or grossly flawed. And even if the treatment were correctly characterized as "conservative," such treatment may justify an inference that medical science had nothing to offer the patient, or that more aggressive treatment regimens were so risky that they were unwarranted, rather than an inference that the condition was not serious or disabling. These considerations lead me to observe that an ALJ's unsupported, boiler-plate conclusion that a treatment history was "conservative" is no more than lay opinion, unless supported by medical opinion evidence.[8]

---

[8] This record in fact contains evidence that more aggressive treatment has been explored and rejected. *See* R. 784 ("Patient was seen in consultation by Dr. Eric Williams, Orthopedics, Einstein Medical Center, who recommended against surgical revision.")

The ALJ is a lay person and may not "interpret raw medical data when evaluating a claimant's functional capacity," which occurred here. *Donat v. Berryhill*, No. 17-5096, 2018 WL 3186953, at *4 (E.D. Pa. 2018) (citing *Phillips v. Berryhill*, No. 15-5204, 2017 WL2224931 at *4 (E.D. Pa. 2017)); *see also Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981) (stating that "an ALJ may not make purely speculative inferences from medical reports"); *Van Horn v. Schweiker*, 717 F.2d 871, 874 (3d Cir. 1983) (holding that an ALJ may not use his or her expertise against that of a physician presenting competent medical evidence). In *Donat*, as in this case, the ALJ found the claimant's alleged disabilities to not be supported by the spine imaging results and other objective medical evidence in the record. *Donat*, 2018 WL 3186953, at *4. The district court remanded for a new RFC determination.

In *Phillips,* the ALJ found the claimant with a history of depression to not be disabled after interpreting the data in the claimant's treatment records. *Phillips*, 2017 WL 2224931 at *5. The district court remanded. In instances where lay interpretation substitutes for medical judgment, remand is appropriate. *See Johnson v. Bowen*, 699 F. Supp. 475 (E.D. Pa. 1988) (finding remand appropriate after the ALJ relied on data from medical reports indicating normal range of motion and minimal intake of pain medication in assessing claimant's RFC). The ALJ in Ms. Miller's case similarly emphasized raw medical data from the diagnostic imaging studies despite the quantified functional limitations specified by Dr. Mergaman, who has the best longitudinal picture of Ms. Miller's impairments.

Without a medical provider speaking to the data contained in Ms. Miller's medical records, I am left as a reviewer to speculate how the findings either affect or do not affect Ms. Miller's functional capacity. I must also speculate how the data supports

or contradicts Dr. Mergaman's opinion. This is not appropriate. *Cotter*, 642 F.2d at 704 (stating that an ALJ's decision must be "accompanied by a clear and satisfactory explication of the basis on which it rests" for the purpose of judicial review). Without supporting medical opinion evidence, there is an evidentiary hole supporting the ALJ's findings, as in *Doak*. Therefore, the ALJ's decision was not based on substantial evidence and remand is appropriate.

### C. The Other Issues Ms. Miller Contests Should be Reexamined on Remand.

Ms. Miller also contests the ALJ's findings regarding the credibility of her testimony, the ALJ's failure to consider the third-party statement of Ms. Miller's son, and the ALJ's omission of various functional limitations supported by Dr. Mergaman in the hypothetical posed to the vocational expert. Because remand is necessary on previously stated issues in this opinion, I will not address these objections at length.

The weight given to Dr. Mergaman's opinion and the way in which the ALJ assesses Ms. Miller's RFC will impact the credibility assessed to Ms. Miller's subjective complaints. This is because subjective complaints of pain supported by medical evidence should be given "great weight" unless there is contradicting medical evidence. *Mason v. Shalala*, 994 F.2d 1058, 1067-68 (3d Cir. 1993).

The ALJ must also specifically address the third-party statement of Ms. Miller's son, Uriah T. Miller. It is the ALJ's responsibility to evaluate the credibility of all witness testimony, and this should be more than a statement from the ALJ that the whole record was considered in reaching a decision. *Van Horn,* 717 F.2d at 873 (stating that the court "would expect [the ALJ] at least to state that he found a witness not credible before wholly disregarding his testimony"); *see also Burnett v. Comm'r of Soc. Sec. Admin.*,

13

220 F.3d 112, 122 (3d Cir. 2000) (holding that it is legal error to ignore third-party statements corroborating a claimant's functional limitations).

Finally, regarding the vocational expert's testimony, the hypothetical posed to the vocational expert must include all of a claimant's medically established impairments. *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002) (citing *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987));  *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). Therefore, the ALJ may wish to reassess the hypothetical given to the vocational expert after reassessing the weight to be given to the treating physician's opinion. This may impact the limitations included in the hypothetical posed to the vocational expert.

## CONCLUSION

Because the ALJ erroneously discounted Dr. Mergaman's opinion and assessed Ms. Miller's RFC based on lay interpretation of raw medical data, I will remand this case to the Commissioner for further proceedings consistent with this opinion.

BY THE COURT:

  *s/ Richard A. Lloret*
  **RICHARD A. LLORET**
  **U.S. Magistrate Judge**